RICARDO ECHEVERRIA #166049
recheverria@shernoff.com
DANICA CRITTENDEN #273309
dcrittenden@shernoff.com
CLAIRE ARNAIZ #352001
carnaiz@shernoff.com
GERALD FLANAGAN #271272
jflanagan@shernoff.com
**SHERNOFF BIDART ECHEVERRIA LLP**
600 South Indian Hill Boulevard
Claremont, California 91711
Telephone: (909) 621-4935
Facsimile: (909) 625-6915

BRANDON K. GONZALEZ #312136
brandon@bkglegal.com
**BKG LEGAL GROUP APC.**
620 Newport Center Drive
Suite 1100, PMB #732
Newport Beach, California 92660
Telephone: (949) 335-5596
Facsimile: (949) 274-8956

STEPHEN G. LARSON #145225
slarson@larsonllp.com
DANIEL R. LAHANA #305664
dlahana@larsonllp.com
**LARSON LLP**
555 S. Flower Street, Suite 3000
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Plaintiffs

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA HORN, an individual; ROSEMARY ADAMS, an individual; and RICARDO ARIAS, an individual; THE ESTATE OF ROSARIO ARIAS, by and through its successor in interest, Yolanda Horn; | Case No.: 5:25-cv-00417-JWH-SP<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs,

v.

AMERICAN ALTERNATIVE INSURANCE CORPORATION, a Delaware corporation; SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., an Illinois corporation, and DOES 1 through 100, inclusive,

Defendants.

1. TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (AS ASSIGNEES)
2. BREACH OF CONTRACT (AS ASSIGNEES)
3. DIRECT ACTION FOR RECOVERY OF JUDGMENT UNDER CALIFORNIA INSURANCE CODE § 11580 (AS JUDGMENT CREDITORS)
4. TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (AS JUDGMENT CREDITORS)
5. NEGLIGENCE
6. INTERFERENCE WITH CONTRACTUAL RIGHTS

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**INTRODUCTION**

1. On February 17, 2020, Rosario Arias ("Rosario"), a 91-year-old man, suffered catastrophic neck and spinal fractures and a traumatic airway obstruction from a fall when he was left unattended at Gracious Care Inc.'s ("Gracious Care") residential care facility. After multiple surgeries, machines were used to assist him in breathing due to the airway restrictions caused by his cervical fractures. Unfortunately, after twenty-

three (23) days of medical treatment and tremendous pain, he tragically died from his injuries. At the time of Rosario's fall, Gracious Care held an insurance policy issued by Defendant American Alternative Insurance Corporation ("American Alternative") with a $1,000,000 policy limit. (Exhibit 1.) Sedgwick Claims Management Services ("Sedgwick") was American Alternative's claims administrator for claims filed under the policy of insurance issued by American Alternative to Gracious Care, Inc.

2. Two years later, Rosario's three surviving adult children, Plaintiffs Yolanda Horn ("Yolanda"), individually and as successor in interest of Rosario's estate, Rosemary Adams ("Rosemary"), and Ricardo Arias ("Richard"), retained Brandon K. Gonzalez, Esq. of BKG Legal Group, APC. On February 28, 2022, Mr. Gonzalez filed the underlying action in Riverside County Superior Court against Gracious Care, its owner and director, Na Zhao ("Zhao"), and Gracious Living, Inc., Case No. CVRI2200795 (the "Underlying Action").

3. After service challenges, on February 7, 2023, Mr. Gonzalez was first contacted by the newly assigned attorney for Gracious Care and Zhao, Probal Young, Esq., of Gordon Rees Scully Mansukhani, LLP ("Gordon Rees"). Mr. Young informed Mr. Gonzalez that the California Secretary of State had suspended Gracious Care's operating license for failure to pay taxes.

4. Four months after counsel first appeared for Zhao in the litigation, on June 7, 2023, Mr. Gonzalez served an offer to the defendants in the Underlying Action pursuant to Code of Civil Procedure section 998 to settle for policy limits of $1,000,000 ("998 Offer"). (Exhibit 2.) The 998 Offer remained open for 30 days—until July 7, 2023. During this time, on June 13, 2023, Mr. Gonzalez followed up with a detailed supplemental offer to settle within policy limits supporting why liability was reasonably clear

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

and damages were likely to exceed $1,000,000 (“Supplemental Offer”). (Exhibit 3.) This Supplemental Offer to settle reiterated the July 7, 2023 acceptance deadline. (*Id*. p. 7.)

5. Neither Gracious Care, nor its owner Zhao, or anyone on behalf of Gracious Care—including Mr. Young, Sedgwick, or American Alternative—responded to Mr. Gonzalez’s 998 Offer or the June 13, 2023 Supplemental Offer. Instead, both expired by their own terms on July 7, 2023. On July 11, 2023, only Defendant Zhou belatedly responded to the 998 Offer, stating “there is insufficient information available to allow Defendant to reasonably evaluate the offer.” Thereafter, Gracious Care continued to refuse to respond to the Underlying Action.

6. On December 21, 2023, the Court entered a default judgment against Gracious Care and in favor of Plaintiffs in the sum of $21,806,955.66 (the “Judgment”). (Exhibit 4.)

7. At no time did American Alternative or Sedgwick on its behalf do anything in the Underlying Action to protect the interests of Gracious Care. American Alternative and Sedgwick’s failure to respond to the 998 Offer, intervene in the Underlying Action, or interplead the policy limits was unreasonable and in bad faith.

8. Ten months after Judgment was entered, in early October 2024, Gracious Care and Zhao assigned all of their assignable rights against American Alternative to Plaintiffs in exchange for a covenant not to execute the Judgment. (Exhibit 5.) Gracious Care and Zhao also agreed not to pursue their unassignable rights.

9. Plaintiffs now bring this action against American Alternative and Sedgwick for, *inter alia*, damages for the delay and failure to provide benefits under the insurance policy, including the Judgment plus interest.

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

## PARTIES

10. Plaintiff Yolanda is, and at all relevant times was, a resident of the State of California, County of Riverside.

11. Plaintiff Rosemary is, and at all relevant times was, a resident of the State of California, County of San Bernardino.

12. Plaintiff Richard is, and at all relevant times was, a resident of the State of California, County of Los Angeles.

13. Yolanda, Rosemary and Richard are the sole surviving children of Rosario. On April 1, 2007, their parents, Rosario and Belen Arias, executed a trust, The Arias Family Living Trust. Rosario and Belen were listed as co-trustees and Yolanda was designated as the second appointed trustee. Shortly thereafter, on April 12, 2007, Belen passed away and Rosario became the sole trustee. On November 11, 2019, Rosario's primary physician issued a declaration of his legal mental/physical incapacity. At that time, Yolanda became the sole trustee of The Arias Family Living Trust. As the personal representative of Rosario's trust and estate after he passed away on March 11, 2020, Yolanda pursued the Underlying Action on behalf of his estate. In this action, she continues to pursue the successor in interest claims on behalf of The Estate of Rosario Arias. Yolanda previously executed an affidavit required by California Code of Civil Procedure section 377.32 when the Complaint was initially filed, and has filed a renewed declaration with this First Amended Complaint.

14. In this First Amended Complaint, Yolanda, individually and as the successor in interest to The Estate of Rosario Arias, Rosemary and Richard will be referred to collectively as "Plaintiffs."

15. Defendant American Alternative is, and at all relevant times was, duly organized and existing under the laws of the State of Delaware and is authorized to transact, and is transacting, the business of insurance




SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

in the State of California, with its principal place of business in Princeton, New Jersey.

16. Defendant Sedgwick Claims Management Services, Inc. is, and at all relevant times was, duly organized and existing under the laws of the State of Illinois and is authorized to transact, and is transacting, the business of insurance claims administration in the State of California, with its principal place of business in Memphis, Tennessee.

17. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe, and on such information and belief allege, that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiffs.

18. Plaintiffs are informed and believe, and based thereon allege, that at all times mentioned herein, each of the Defendants was the agent, partner, joint venturer, associate, and/or employee of one or more of the other Defendants and was acting in the course and scope of such agency, partnership, joint venture, association, and/or employment when the acts giving rise to the causes of action occurred.

## FACTUAL BACKGROUND

### A. Gracious Care's American Alternative policy

19. As of February 17, 2020, Gracious Care held a Social Service and Healthcare Professional Liability Coverage policy issued by American Alternative, Policy Number 99A2PL0017162-00, which was effective from



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

January 31, 2020 to January 31, 2021 (the "Policy"). Under the Policy, each professional incident had a per occurrence limit of $1,000,000.

20. The Policy promises that American Alternative "will pay those sums that the insured becomes legally obligated to pay as damages because of injury to which this insurance applies. We will have the ***right and duty to defend the insured against any 'suit'*** seeking those damages." (Emphasis added, Exhibit 1, p. 15.)

**B. Background regarding Rosario and his family**

21. Rosario was a loving father and hard-working railroad trackman by trade. His wife, and Plaintiffs' mother, Belen, passed away on April 12, 2007. Providing for Belen, Yolanda, Rosemary, and Richard was of paramount importance to Rosario. Even after Belen's death, Rosario was very active. He belonged to three retirement clubs, one of which he was President and another treasurer. Rosario loved going to casinos, playing cards, dancing, walking, listening to music, and enjoying life. He was extremely friendly, loved everyone, and did not speak ill of others.

22. Though the family was poor by societal standards, Rosario always did everything he could to provide for his children while they were growing up and he was actively involved in their adult lives. Rosario's birthday was always a big family event. There was nothing that he loved more than being surrounded by his family. Attached as Exhibit 6 are true and correct photographs that Yolanda took of Rosario while celebrating his last two birthdays.

23. Yolanda is the oldest child of Rosario and Belen. She cherished every moment spent with her father during her childhood. Her favorite memory is racing him on foot. Although he was faster than Yolanda, Rosario always let her beat him. In her teens, Rosario taught Yolanda how

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

to work on cars and on his days off, they would rebuild Rosario's 1957 Chevrolet. When Yolanda was young, she was her parent's translator. Then, at about 7 years of age, Yolanda was the person who filled out forms, wrote letters and whatever else her parents needed. She continued in this role for Rosario following her mother's passing.

24. Rosemary is Rosario and Belen's second oldest child, and had a close relationship with her father. Though she was seen as the "troublemaker" of the Arias household during her teenage years, she loved her father very much and learned invaluable lessons from him during her life, including the importance of hard work. During Rosemary's adult years, the family, including her father, remained a close unit. Although everyone was married with children, the family would get together for all major holidays, including Christmas, Thanksgiving, Easter, and birthdays.

25. As his only son, Richard had a very close relationship with Rosario. When Richard was in his twenties, his father helped him get a job as a trackman with the Los Angeles Junction Railroad Company. Like his father, Richard was hired as a trackman and served as Rosario's partner in building and laying railroad tracks.

26. Working alongside Rosario taught Richard many lessons that have had a marked effect on him. Most importantly, Richard learned while working with his father that Rosario was a resilient man and a hard worker. Richard refers to his father as the "Rock of Gibraltar" because that was the type of man he was; he stood tall and it always seemed that nothing could ever take him down.

27. As a direct result of American Alternative and Sedgwick's failure to provide the benefits due under the Policy, Plaintiffs, and each of them, have suffered anxiety, worry, and stress. As a direct result of American Alternative and Sedgwick's failure to provide the benefits due



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

under the Policy, Plaintiffs, and each of them, have also sustained personal physical injuries, and physical sickness, as well as mental and emotional distress, which worsened and compounded the emotional distress they were already experiencing in the wake of their father's passing.

**C. Rosario's deteriorating health, leading to his admission to Gracious Care**

28. As Rosario aged, he was diagnosed with Parkinson's Disease. When Rosario's Parkinson's Disease started to gradually take hold, Richard offered to take care of his father full-time that year. However, when his father began experiencing memory loss and falling, it became clear that his father needed more assistance than Richard or his siblings could provide. Thus, his family contacted Lighthouse Senior Services, a senior living referral service, and received a referral to Gracious Care.

29. Gracious Care markets itself as a residential care and assisted living facility for the elderly providing "round the clock care" with various locations throughout the Inland Empire.

30. After contacting Gracious Care and touring the facility, Rosario's family decided it was an appropriate fit for him, especially because there were Eastvale locations not far from Yolanda's home in Corona, California. On December 9, 2019, Rosario became a resident at Gracious Care's 12515 Hudson River Dr., Eastvale, California, 91752 location. At the time of his admission, Gracious Care was to provide 24-hour residential care services to Rosario.

31. Given the proximity to her home, Yolanda visited Rosario at Gracious Care most days of the week from morning until bedtime. She and her father would play bingo, poker, blackjack, and dominos. Similarly, Rosemary and Richard made frequent visits. All of his children, and eldest

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

grandchild, Stephanie, continued to have a close relationship with him while he remained at Gracious Care.

**D. Gracious Care fails to supervise Rosario and he sustains severe injuries that lead to his death**

32. At the time of Rosario's admission to Gracious Care, Rosario was suffering from Parkinson's Disease, which was causing a sharp decline in his cognitive and motor functions. At that time, he was experiencing postural instability, gait difficulty, and a leftward lean. He could not walk without assistance. Cognitively, the Parkinson's Disease was causing him marked instances of memory loss, attention lapse, forgetfulness, and an inability to independently accomplish everyday tasks.

33. As a result of Rosario's condition, he required around-the-clock assistance. Yolanda repeatedly underscored Rosario's need for constant supervision and care to Gracious Care personnel. At the time of admission, Gracious Care acknowledged Yolanda's emphasis on Rosario's need for heightened care by noting a "big change" in Rosario's health condition, which would require an additional $300 per month for Rosario's stay. Furthermore, Gracious Care agreed to provide Rosario with 24-hour residential care services to maintain his "health, safety, and welfare," as stated in Gracious Care's Residential Care Admission Agreement, which was signed by Yolanda.

34. On December 28, 2019—just seventeen days post-admission—Rosario experienced his first fall at Gracious Care. Upon arriving at the Gracious Care that day, Yolanda observed Rosario with a bandage covering the upper left side of his forehead. She was told that her father had fallen and hit his head as one of the caregivers turned away for a

SHERNOFF BIDART ECHEVERRIA LLP LAWYERS FOR INSURANCE POLICYHOLDERS

moment. He suffered a contusion to his forehead that necessitated a hospice visit to clean and bandage the wound.

35. Yolanda frustratingly reiterated to Gracious Care staff that she had warned personnel at the facility just two weeks earlier that Rosario needed to be watched 24/7 for this very reason. Nonetheless, Gracious Care tried to assure her they were providing the promised care.

36. Approximately six weeks later, on February 17, 2020, despite clear notice that Rosario was a high fall risk, Gracious Care failed again to supervise him, this time leading to fatal consequences. Rosario had been taken to the bathroom by an employee of Gracious Care, Branden Marquez, who left him on the toilet while he exited the room to tend to another resident. Notably, the restroom did not have any handrails, grab bars or other safety fixtures to assist a resident in maneuvering, nor did the toilet itself have any safety supports. While the employee was away, Rosario fell from the toilet onto the ceramic tile floor and hit his head, causing serious head contusions, multiple abrasions, a nasal bone fracture, and two cervical vertebrae fractures. The laceration above his right eyebrow caused a hematoma that forced his right eyelid shut. Additionally, the cervical fractures had caused displacement of vertebra that began obstructing Rosario's airway. The last words Rosario spoke to Yolanda were, "My daughter, he [the male caregiver] left me alone. He did not hold me."

37. Over the course of the next twenty-three (23) days, Rosario suffered extreme pain from his injuries while being treated at multiple hospitals. Yolanda stayed with him throughout his hospitalizations, switching shifts with Rosemary and Stephanie.

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**E. Rosario's treatment over the course of three weeks before he succumbed to his injuries**

38. Rosario was first taken by ambulance to the emergency room at Corona Regional Medical Center ("Corona Regional"). Upon Yolanda's quick arrival, she immediately met with her father's emergency physician. To her utter shock, the first information she was given by this physician, Jon Wellbacker, M.D., was that "[her] father [wa]s dying…." He went on to explain that due to the extent of Rosario's injuries, Corona Regional lacked the ability to properly treat him, and that for him to have any chance of survival, he needed to be immediately transported to a nearby trauma center.

39. The medical urgency was necessitated by the C1-C2 spinal fractures, which were obstructing Rosario's airway, causing his lower lungs to collapse and a buildup of fluid between the tissues that lined his lungs. This called for an immediate tracheostomy, or placement of a trachea tube, so that he could receive oxygen through a mechanical ventilator. This was done and prevented him from speaking. Not being able to speak to his children and granddaughter while knowing that any moment could be his last was tantamount to torture for Rosario.

40. Rosario was prepped for an ambulance transport to a nearby Level 1 Trauma Center, Riverside University Health System Medical Center ("RUHS"). Once he arrived at RUHS, Rosario was stabilized, and his family met with multiple physicians to discuss RUHS's surgical assessment and plans. While it was made clear by the physicians that surgical intervention was necessary, over the next few days the details provided to the family as to how each fracture would be addressed was not. The uncertainty caused the family to look elsewhere for a second opinion. They chose to move Rosario to the University of California, Irvine



SHERNOFF BIDART ECHEVERRIA LLP LAWYERS FOR INSURANCE POLICYHOLDERS

Medical Center ("UCI"), a hospital highly trusted by Rosario. Rosario remained at RUHS for approximately eight (8) days until RUHS cleared him for transportation to UCI. On February 24, 2020, Yolanda authorized air ambulance transport to UCI.

41. After Rosario settled in at UCI, the family became immediately comforted by the level of attention and care that Rosario received. The family discussed UCI's detailed assessment and plan regarding Rosario's cervical fractures, and agreed to the cervical fusion that was proposed.

42. In early March 2020, Rosario underwent surgery at UCI to fuse his C1 and C2 vertebrae. He initially responded well to the surgery and his medical team began transitioning him to smaller neck braces. However, he remained breathing with the assistance of a ventilator. The providers all warned that the longer he remained on the ventilator, the more likely he was to become dependent. Rosario, through hand gestures, affirmatively advised his providers and family that he did not want to remain on the ventilator. This was consistent with the medical directives that Rosario had previously imparted to Yolanda. A few days later, on March 9, 2020, Rosario's medical team at UCI removed his trachea tube to allow him to return to spontaneous breathing. However, the next day, on March 10, 2020, his breathing rapidly declined as he began coughing, spitting up saliva and other fluids, and gargling at an alarming rate. His providers suctioned him every fifteen (15) minutes to clear his airway. Consistent with their father's wishes, Plaintiffs authorized the providers to begin palliative care and cease efforts to sustain his life with machines.

43. The following day, on March 11, 2020, Rosario died from his injuries sustained at Gracious Care.

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**F. Plaintiffs file the Underlying Action**

44. Before filing the Underlying Action, Mr. Gonzalez attempted to locate and notify Gracious Care of his representation by sending letters to all known addresses and operating locations. He received no response and, on February 28, 2022, proceeded to file the Underlying Action on behalf of Plaintiffs. Thereafter, he conducted further investigation to locate where Gracious Care could be served, including public record searches, Secretary of State searches, real property ownership reports, location history reports, deed searches and reports, cell phone number and associated address reports, comprehensive business reports, associated business entity searches and filings, business associates searches and reports, residential care facility licensing information, general internet searches, and social media searches.

45. Through those efforts, it became apparent to Gonzalez that Zhao, the owner of Gracious care, had removed herself as the point of contact for the seven residential care facilities she either owned or held a financial interest in.

46. After multiple unsuccessful attempts at serving Gracious Care with the Complaint, on October 27, 2022, Mr. Gonzalez filed an Application for an Order Directing Service of Summons on Gracious Care by Delivery of Process to the Secretary of State since efforts to personally serve its agent for service of process had failed. Moreover, Gracious Care had been suspended by the California Secretary of State for failure to pay taxes prior to the time of the filing of the Underlying Action and remained suspended in October 2022.

47. On October 31, 2022, the court in the Underlying Action ordered that service of the Summons and Complaint, as well as the court's Order, be made upon Gracious Care by delivery to the California Secretary



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

of State. Specifically, the Court concluded that Gracious Care was a domestic corporation and that its designated agent for service of process could not with reasonable diligence be found at the Eastvale and Lake Elsinore addresses designated for personal delivery of process.

48. Pursuant to the Court's Order, on November 11, 2022, Mr. Gonzalez served the Complaint on the Secretary of State. On December 23, 2022, the Secretary of State served Gracious Care at its designated principal place of business, namely 12515 Hudson River Drive, Eastvale, California, 91752. Notably, this is the same address at which Mr. Gonzalez had previously made multiple service attempts.

**G. American Alternative assigns the law firm of Gordon Rees as defense counsel for Gracious Care**

49. On January 23, 2023, David Bohanan, a Senior Professional Liability Claims Specialist at Sedgwick, emailed Mr. Gonzalez requesting a complete copy of the Complaint packet. In response, Mr. Gonzalez asked Mr. Bohanan to clarify Sedgwick's role in the matter. On January 31, 2023, Mr. Bohanan confirmed that Sedgwick was American Alternative's claims administrator for Gracious Care's claims.

50. On the same day, Mr. Gonzalez emailed Mr. Bohanan the Summons, Complaint, Declaration of Successor in Interest to the Arias Estate, four Statements of Damages, Notice of Case assignment, and ADR packet. Mr. Gonzalez also gave a brief overview of the case and explained that Plaintiffs were in the process of filing an application for entry of default that week. However, Mr. Gonzalez offered to refrain from filing until Mr. Bohanan was able to fully review the documents and the parties were able to hold a substantive conversation regarding the claim and Gracious Care's intentions with respect to the Underlying Action.

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

51. In response, Mr. Bohanan raised the issue of service on Gracious Care. After Mr. Gonzalez explained the numerous steps taken for service, on February 3, 2023, Mr. Bohanan assigned the claim to defense counsel as "there [wa]s too much for [him] to unpack."

52. A few days later, on February 8, 2023, Mr. Gonzalez reached out to Mr. Bohanan regarding an upcoming Case Management Conference. He attached a copy of the Case Management Statement, which he requested Mr. Bohanan forward to the handling defense attorney, if assigned. Mr. Gonzalez also asked to have the defense attorney call him regarding the claim and defense representation. Mr. Gonzalez again reiterated that Plaintiffs would delay entering default against Gracious Care because of Sedgwick's recent involvement and in anticipation that an answer on Gracious Care's behalf would be filed forthwith. Soon after, Mr. Bohanan responded that he had forwarded the message to defense counsel, who would reach out to Mr. Gonzalez shortly.

53. On or around February 8, 2023, American Alternative assigned Mr. Young of Gordon Rees as defense counsel.

54. Soon thereafter, Mr. Gonzalez met and conferred with Mr. Young and agreed it was in the best interest of both parties to postpone Plaintiffs' impending entry of default while Mr. Young conferred with his clients. Mr. Young indicated it was his intention to have an answer on file before the February 22, 2023 Case Management Conference.

55. The next day, on or about February 9, 2023, Mr. Gonzalez and Mr. Young met and conferred again. During this conversation, Mr. Young disclosed that Gracious Care was a suspended corporate entity. He stated he would need to contact Zhao regarding the suspension and whether Gracious Care could be brought into good standing in a timely fashion so he could file an answer to the complaint on Gracious Care's behalf. Mr.



SHERNOFF BIDART ECHEVERRIA LLP LAWYERS FOR INSURANCE POLICYHOLDERS

Gonzalez agreed to allow Mr. Young further time to confer with his client and attempt to cure the procedural deficiencies before the upcoming Case Management Conference. Subsequently, the February 22, 2023 Case Management Conference was continued to May 17, 2023.

56. During this time, Gracious Care remained a suspended corporation with the California Secretary of State. As such, Mr. Young asserted he was barred from appearing in the action on Gracious Care's behalf until it was revived. During this time, American Alternative did not take any steps to intervene in the Underlying Action or interplead the policy limits.

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**H. The Underlying Action continues and Plaintiffs issue an offer to settle**

57. As of May 8, 2023, one week before the continued Case Management Conference, Gracious Care still had not been revived. At this time, in anticipation of the upcoming Case Management Conference, Plaintiffs dismissed Gracious Living, Inc., which was not covered under the Policy nor were its facilities involved in the incident.

58. On May 10, 2023, Mr. Young on Zhao's behalf, filed a Motion to Strike the Punitive Damage Allegations of Plaintiffs' Complaint in the Underlying Action ("Motion to Strike"). On May 12, 2023, Mr. Young also filed a Case Management Statement for the May 17, 2023 Case Management Conference. The Statement indicated that American Alternative had issued a reservation of rights letter and advised that Gracious Care had been suspended by the Secretary of State. He stated its principals were in the process of getting it revived and advised the Court that "[o]nce [Gracious Care] is revived, it is expected counsel for Zhao intends to make an appearance for Gracious Care, Inc."

59. At the Case Management Conference, counsel for Zhao, Jennifer Paez of Gordon Rees, told the Court that at that time her firm did not represent Gracious Care. The Court continued the Case Management Conference to July 27, 2023 and scheduled Zhao's Motion to Strike for that same day.

60. As an alternative to opposing Zhao's Motion to Strike, on July 14, 2023, Plaintiffs filed a First Amended Complaint to bolster their claim for punitive damages. Upon review of Plaintiffs' First Amended Complaint, Zhao did not re-file her Motion to Strike. Gracious Care did not respond to the First Amended Complaint.

61. Three weeks after the Case Management Conference, on June 7, 2023, Mr. Gonzalez, on behalf of Plaintiffs, served the 998 Offer for $1,000,000 on Gordon Rees. It remained open for 30 days. (Exhibit 2, p. 3.) Gordon Rees provided the 998 Offer to Sedgwick.

62. One week later, on June 13, 2023, Mr. Gonzalez sent Mr. Young of Gordon Rees the Supplemental Offer letter with five attachments providing detailed supplemental factual and legal support justifying the need to accept the 998 Offer. (Exhibit 3.) Gordon Rees provided the Supplemental Offer to Sedgwick. This Supplemental Offer outlined the facts of both Rosario's significant falls at Gracious Care and Gracious Care's liability for his death. For example, it documented Yolanda's conversations with Gracious Care caregivers after the first fall wherein she requested that her father not be left alone when using the bathroom or eating and that additional precautions be put in place during these activities, such as securing him with floor cushions. It also documented the egregious instruction from Zhao after the second fall to other Gracious Care caregivers that despite Rosario's significant head injuries, no one call emergency services because he was on the "Do Not Resuscitate" list.



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

(Fortunately, one of the caregivers disobeyed Zhao's instructions and called 911, although Zhao later verbally reprimanded this caregiver when Zhao learned that first responders had been discharged to the facility.)

63. Moreover, the Supplemental Offer outlined Rosario's injuries sustained in the fall and treatment at three different hospitals over the course of 23 days up until his death. This summary was supported by the attachments, which included photos of Rosario's injuries from his first and second fall, a selection of his medical records, photos of him in the hospital after his second fall, and his death certificate.

64. Mr. Gonzalez's June 13, 2023 Supplemental Offer letter also detailed that Plaintiffs had initiated and continued to reserve their right to take a default judgment against Gracious Care and have it duly enforced against Zhao. Mr. Gonzalez reiterated that the damages sought through the Request for Default were $17,000,000. Most importantly, he then advised that, "[a]s set forth in Plaintiffs' Offer to Compromise, dated June 7, 2023, and set to expire July 7, 2023, Plaintiffs, and each of them, are willing to have judgment taken against Defendants for the sum of $1,000,000.00, each party to bear their own fees and costs. … [T]his demand is the only opportunity that shall be given to Defendants to effect a full and final resolution of all claims, of each Plaintiff, against each Defendant, arising out of the wrongful death of Rosario Arias." (Exhibit 3, p. 7.)

65. While these offers were pending, on June 23, 2023, Mr. Gonzalez and Mr. Young entered a joint stipulation extending Plaintiffs' deadline to file a Request for a Default Judgment one month to July 23, 2023. The stipulation explained that Gracious Care remained suspended with the California Secretary of State and was, by operation of law, barred from defending a court action. It referenced Plaintiffs' previously filed, but rejected (due to minor changes needed on the form), Request for Entry of



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

Default submitted on May 9, 2023, and documented that the parties, including Gracious Care, had been engaged in settlement negotiations. This stipulation advised the Court that Plaintiffs intended to seek a default judgment against Gracious Care and potentially dismiss Zhao, while stating that Zhao was contemplating and investigating potential coverage issues, including the potential for revivor of Gracious Care.

**I. American Alternative and Sedgwick fail to act or respond to the policy demand letter on behalf of Gracious Care and the Court enters Judgment against Gracious Care**

66. Despite their prior conversations and the stipulation extending the default deadline, Mr. Gonzalez did not receive a response from Mr. Young at Gordon Rees or anyone else on behalf of Gracious Care to the 998 Offer or the June 13, 2023 Supplemental Offer to settle. On July 7, 2023, the 998 Offer and Supplemental Offer expired by their own terms without being accepted or extended.

67. Shortly before the prior extension to file a Request for a Default Judgment expired, on July 21, 2023, Mr. Young advised Mr. Gonzalez that the duly authorized Director of Gracious Care, Zhao, was in contact with the Franchise Tax Board and had submitted an application for revivorship. As a result, Mr. Gonzalez and Mr. Young agreed to extended Plaintiffs' deadline to file the Request for a Default Judgment regarding Gracious Care to August 22, 2023.

68. Six weeks after the 998 Offer and Supplemental Offer expired, on August 21, 2023, Zhao alone filed an Answer to Plaintiffs' First Amended Complaint.

69. On August 15, 2023, Mr. Gonzalez reiterated to Mr. Young that Plaintiffs would proceed with entry of default as there had been no



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

indication, from Mr. Young or anyone else, that Gracious Care would in fact be revived. In response, Zhao's counsel asked Plaintiffs to enter into another stipulation to extend the deadline to September 1, 2023 before the September 7, 2023 Case Management Conference. Plaintiffs agreed to this one final extension. Thereafter, on August 31, 2023, the Court continued the Case Management Conference to November 29, 2023.

70. By September 18, 2023, Gracious Care still had not responded to the First Amended Complaint or revived itself. As a result, Plaintiffs filed a Request for Entry of Default, which was rejected by the Court Clerk because Plaintiffs' filing of the First Amended Complaint effectively restarted the default process against Gracious Care. On September 18, 2023, Mr. Gonzalez began efforts to serve Gracious Care with the First Amended Complaint, which was successfully accomplished on September 25, 2023. Meanwhile, on September 22, 2023, Mr. Gonzalez e-served copies of a Notice of Acknowledgement and Receipt of the First Amended Complaint on behalf of Gracious Care, as well as four Statements of Damages, on Mr. Young. On September 27, 2023, Zhao, as the Director and Officer of Gracious Care, returned the executed Notice and Acknowledgment of Receipt on behalf of Gracious Care.

71. By October 30, 2023, Gracious Care had still failed to revive itself or respond to Plaintiffs' First Amended Complaint. On this day, Plaintiffs filed a new Request for Entry of Default and Default Judgment with the court in accordance with local rules along with a request for dismissal of Zhao. In this paperwork, Mr. Gonzalez requested Plaintiffs' damages, as well as attorney fees and costs.

72. On November 17, 2023, the Court reviewed the proposed Default Judgment that Mr. Gonzalez had submitted two weeks earlier and directed the Clerk to provide notice to Plaintiffs of the Court's questions



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

regarding the calculation of damages sought by the Default Judgment. In response, on November 27, 2023, Plaintiffs filed a new proposed Default Judgment along with a Declaration from Mr. Gonzalez. Mr. Gonzalez's declaration explained the calculation of the $21,350,000 and offered to appear before the Court if the Court had any additional questions.

73. On December 21, 2023, the court entered the Judgment against Gracious Care in the sum of $21,806,955.66. (Exhibit 4.) On December 27, 2023, Plaintiffs filed a Notice of Entry of Judgment. (Exhibit 7.) Gracious Care did not appeal the Judgment.

74. On March 14, 2024, Mr. Young notified Mr. Gonzalez that Gracious Care was finally "back up and running" on the California Secretary of State's website, and thus in good standing, as of March 1, 2024. On the same day, Mr. Young also notified Mr. Bohanan of Sedgwick that Gracious Care had been revived. On March 23, 2024, Mr. Young provided website screenshots supporting this. At the time, Gracious Care still had until June 21, 2024 to move to vacate the entry of default pursuant to California Code of Civil Procedure section 473(b). However, neither Mr. Young, Gracious Care, Sedgwick, American Alternative, nor anyone else acting on Gracious Care's behalf, moved to have the Judgment set aside within the time period provided for in California Code of Civil Procedure section 473(b). As such, the Judgment has since become final and remains unpaid.

**J. After Judgment is entered and unable to be set aside, Gracious Care and Zhao assign their assignable rights to Plaintiffs**

75. In early October 2024, Gracious Care and Zhao assigned all of their assignable rights against American Alternative to Rosario's estate and Yolanda, Rosemary, and Richard in exchange for a covenant not to execute

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

the Judgment. Gracious Care and Zhao also agreed not to pursue their unassignable rights. (Exhibit 5.)

## FIRST CAUSE OF ACTION

**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Against American Alternative)**

**(As Assignees)**

76. Plaintiffs refer to each and every paragraph above and incorporate those paragraphs as though set forth in full in this cause of action.

77. Defendants American Alternative and DOES 1 through 100, inclusive, and each of them, breached their duty of good faith and fair dealing owed to Plaintiffs, as assignees of Gracious Care and Zhao, in the following respects:

a) Unreasonably failing to accept the 998 Offer and the Supplemental Offer to settle the Underlying Action within policy limits;

b) Unreasonably failing to intervene in the Underlying Action to protect the interests of its insured on the issue of damages;

c) Unreasonably failing to interplead the policy limits in the Underlying Action;

d) Unreasonably failing to reach a prompt, fair and equitable settlement of the Underlying Action after liability had become reasonably clear;

e) Unreasonably failing to move to vacate the Judgment in the Underlying Action within the statutory period;

f) Unreasonably delaying and denying benefits under the Policy;

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

g) Unreasonably failing to conduct a thorough, fair, and balanced investigation in evaluating Plaintiffs' claims against Gracious Care and Zhao;

h) Unreasonably failing to give at least as much consideration to its insureds' interests and welfare in the investigation and handling of Plaintiffs' claims as it gave to its own interests;

i) Unreasonably engaging in a pattern and practice of failing to give at least as much consideration to its insureds' interest in the investigation and handling of claims as it gives its own interests;

j) Unreasonably placing its own financial interests above its insureds' interests;

k) Unreasonably failing to diligently search for and consider evidence to support coverage;

l) Unreasonably compelling Plaintiffs to institute this litigation to obtain benefits due under the Policy.

78. American Alternative and DOES 1 through 100, inclusive, and each of them, have breached their duty of good faith and fair dealing owed to Plaintiffs, as assignees of Gracious Care and Zhao, by other acts or omission of which Plaintiffs are presently unaware, and which will be shown according to proof at the time of trial.

79. The foregoing unreasonable conduct was not limited to American Alternative and DOES 1 through 100's evaluation of Gracious Care's claim, but represents an ongoing pattern and practice, which it applies to all of its policyholders, which is specifically designed by the Defendants to save money at the expense of its policyholders. This ongoing pattern of conduct constitutes institutional bad faith.





SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

80. Defendants' institutional bad faith constitutes reprehensible conduct because it is part of a repeated pattern of unfair practices and not an isolated occurrence. The pattern of unfair practices constitutes a conscious course of wrongful conduct that is firmly grounded in Defendants' established company policies and practices. Defendants have engaged in similar wrongful conduct as to individuals other than Gracious Care, Zhao and Plaintiffs and substantially increased their profits as a result of causing similar harm to others.

81. Defendants' conduct was undertaken by its deputies or managing agents, who were responsible for claims supervision and operations, communications, and decisions. This conduct was undertaken on behalf of Defendants. Defendants further had advanced knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized and approved by managing agents whose precise identities are unknown to Plaintiffs at this time.

82. As a further proximate result of Defendants' unreasonable conduct, Plaintiffs, as assignees of Gracious Care and Zhao, have suffered and will continue to suffer in the future, damages under the Policy, plus interest and other economic and consequential damages, including the unpaid Judgment plus 10% statutory interest per year, in an amount to be shown at the time of trial.

83. As a proximate result of aforementioned wrongful conduct of defendants, Plaintiffs, assignees of Gracious Care, were compelled to retain legal counsel to obtain the benefits due under the Policy. Therefore, Defendants are liable to Plaintiffs for those attorneys' fees reasonably necessary and incurred by Plaintiffs in order to obtain benefits under the Policy in a sum to be determined at the time of trial. (*Brandt v. Superior Court* (1985) 37 Cal.3d 812.)

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

84. Defendants,' and each of them, conduct described above was undertaken by the corporate Defendants' officers or managing agents, who were responsible for claims supervision and operations, underwriting, communications, and/or decisions. The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of the corporate Defendants. Further, said managing agents either had advance knowledge of the actions and conduct of said individuals, whose actions and conduct were authorized and/or approved by the managing agents, or the conduct has been fully ratified by Defendants and/or their managing agents.

**SECOND CAUSE OF ACTION**

**(Breach of Contract Against American Alternative)**

**(As Assignees)**

85. Plaintiffs refer to each and every paragraph above and incorporate those paragraphs as though set forth in full in this cause of action.

86. Defendants owed duties and obligations to Plaintiffs, as assignees of Gracious Care and Zhao, under the Policy.

87. Gracious Care and Zhao fulfilled and performed all their obligations under the Policy.

88. Defendants, and each of them, breached the terms of the Policy by failing to provide benefits owed to Plaintiffs, as assignees of Gracious Care and Zhao, under the Policy.

89. As a direct and proximate result of Defendants' conduct and breach of contractual obligations, Plaintiffs have suffered damages under the Policy in an amount to be determined according to proof at the time of trial.



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**THIRD CAUSE OF ACTION**

**(Direct Action for Recovery of Judgment Under Insurance Code § 11580 Against American Alternative)**

**(As Judgment Creditors)**

90. Plaintiffs refer to each and every paragraph above and incorporate those paragraphs as though set forth in full in this cause of action.

91. California Insurance Code section 11580 allows a judgment creditor to bring a direct action to enforce the judgment against the judgment debtor's liability insurer.

92. Under California Insurance Code section 11580, Plaintiffs, as judgment creditors of American Alternative's insureds, have become third-party beneficiaries of the Policy. Thus, Plaintiffs are entitled to recover the Judgment from the Underlying Action plus interest from the Defendants under the terms of the Policy.

93. Plaintiffs hereby seek payment of the Judgment plus interest under California Insurance Code section 11580.

**FOURTH CAUSE OF ACTION**

**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Against American Alternative)**

**(As Judgment Creditors)**

94. Plaintiffs refer to each and every paragraph above and incorporate those paragraphs as though set forth in full in this cause of action.

95. Defendants have breached their duty of good faith and fair dealing owed to Plaintiffs, as judgment creditors, adjudicated claimants and third-party beneficiaries under the Policy, as though they were named

insureds under the Policy, by unreasonably failing and refusing to pay the Policy benefits, including the Judgment in the Underlying Action and interest, when liability was not only reasonably clear, but has already been established by the final Judgment.

96. Plaintiffs are informed and believe and thereon allege that Defendants have breached their duty of good faith and fair dealing owed to Plaintiffs, as judgment creditors, adjudicated claimants and third-party beneficiaries under the Policy, by other acts or omissions of which Plaintiffs are presently unaware and which will be shown according to proof at the time of trial.

97. As a proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered damages, including economic losses and personal physical injuries, physical sickness, physical disability, and mental and emotional distress, for a total amount to be shown at the time of trial.

98. As a further proximate result of the unreasonable conduct of defendants, Plaintiffs were compelled to retain legal counsel to obtain the benefits due under the Policy. Therefore, Defendants are liable to Plaintiffs for those attorneys' fees and costs incurred by Plaintiffs in order to obtain the benefits of the Policy in a sum to be determined at trial.

99. Defendants' conduct described herein was intended by the Defendants to cause injury to Plaintiffs or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiffs, subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention to deprive Plaintiffs of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

Civil Code section 3294, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of defendants.

100. Defendants' conduct described herein was undertaken by the corporate Defendants' officers or managing agents, identified herein as DOES 1 through 100, inclusive, who were responsible for claims supervision, underwriting, communications, and/or decisions. The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of the corporate Defendants. Further, said corporate Defendants had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized and approved by managing agents whose precise identities are unknown to Plaintiffs at this time and are therefore identified and designated herein as DOES 1 through 100, inclusive.

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**FIFTH CAUSE OF ACTION**

**(Negligence Against Sedgwick)**

**(As Individuals and Assignees)**

101. Plaintiffs refer to each and every paragraph above and incorporate those paragraphs as though set forth in full in this cause of action.

102. As American Alternative's claims administrator for the claims filed by Gracious Care under the insurance policy issued by American Alternative, Sedgwick owed Plaintiffs a duty of ordinary care both directly and as assignees of Gracious Care and Zhou.

103. Sedgwick agreed on behalf of American Alternative to defend Gracious Care without reservation. Sedgwick selected Gordon Rees to represent Plaintiffs in the Underlying Action on behalf of American Alternative. Sedgwick failed to inform American Alternative of Gracious

Care's suspended status, failed to inform American Alternative of Plaintiffs' 998 Offer and Supplemental Offer, and failed to inform American Alternative of the entry of the Judgment.

104. Sedgwick breached its duty of ordinary care by:

(a) Unreasonably failing to accept the 998 Offer and the Supplemental Offer on behalf of American Alternative to settle the Underlying Action within policy limits;

(b) Unreasonably failing to intervene in the Underlying Action to protect the interests of Gracious Care on the issue of damages;

(c) Unreasonably failing to interplead the policy limits in the Underlying Action;

(d) Unreasonably failing to reach a prompt, fair and equitable settlement of the Underlying Action after liability had become reasonably clear;

(e) Unreasonably failing to move to vacate the Judgment in the Underlying Action within the statutory period;

(f) Unreasonably delaying and denying benefits under the Policy;

(g) Unreasonably failing to conduct a thorough, fair, and balanced investigation in evaluating Plaintiffs' claims against Gracious Care and Zhao;

(h) Unreasonably failing to give at least as much consideration to Gracious Care's interests and welfare in the investigation and handling of Plaintiffs' claims as it gave to its own interests;

(i) Unreasonably engaging in a pattern and practice of failing to give at least as much consideration to the

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

interests of insureds in the investigation and handling of claims as it gives its own interests;

(j) Unreasonably placing its own financial interests above the interests of insureds;

(k) Unreasonably failing to diligently search for and consider evidence to support coverage; and,

(l) Unreasonably compelling Plaintiffs to institute this litigation to obtain benefits due under the Policy.

105. A special relationship exists between Gracious Care and Sedgwick. The contract entered into between American Alternative and Sedgwick was for the administration of claims brought by Plaintiffs against Gracious Care. Sedgwick's performance of the contract was intended to, and did, directly affect Gracious Care. Accordingly, it was clearly foreseeable that, *inter alia*, failure to reach a prompt, fair and equitable settlement of the Underlying Action after liability had become reasonably clear would adversely affect Gracious Care. Sedgwick was aware of this fact. Further, there is no doubt that Gracious Care suffered harm as a result of, *inter alia,* Sedgwick's failure to reasonably resolve Plaintiffs' claims. Sedgwick's conduct was closely connected to, indeed directly caused Gracious Care's injury. Sedgwick's lack of diligence was particularly blameworthy since it continued after the probability of damage was drawn directly to Sedgwick's attention. Finally, public policy supports finding a duty of care in the present case. The willful failure or refusal of a claims administrator to prosecute a claim with diligence is grounds for liability.

106. A special relationship exists between Plaintiffs and Sedgwick. The contract entered into between American Alternative and Sedgwick was for the administration of claims brought by Plaintiffs against Gracious Care. Sedgwick's performance of the contract was intended to, and did,



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

directly affect Plaintiffs. It was clearly foreseeable that, *inter alia*, failure to reach a prompt, fair and equitable settlement of the Underlying Action after liability had become reasonably clear would adversely affect Plaintiffs. Sedgwick was aware of this fact. Further, there is no doubt that Plaintiffs suffered harm since they were unable to recover for the claims they brought against Gracious Care. Sedgwick's conduct was closely connected to, indeed directly caused Plaintiffs' injury. Sedgwick's lack of diligence was particularly blameworthy since it continued after the probability of damage was drawn directly to Sedgwick's attention. Finally, public policy supports finding a duty of care in the present case. The willful failure or refusal of a claims administrator to prosecute a claim with diligence is grounds for liability.

107. As a direct and proximate result of Sedgwick's unfair, unreasonable, and incompetent handling of Gracious Care's insurance claim, Plaintiffs have suffered damages, including economic losses and personal physical injuries, physical sickness, physical disability, and mental and emotional distress, for a total amount to be shown at the time of trial.

108. The stress, anxiety, and financial hardship caused by Sedgwick's conduct has manifested in physical symptoms and conditions. As a direct and proximate result of Sedgwick's unfair and unreasonable conduct, Plaintiffs have suffered severe emotional distress, mental anguish, and psychological injuries. The prolonged and unreasonable handling of their claim has caused Plaintiffs to suffer psychological trauma.

109. The full extent of Plaintiffs' physical and emotional injuries may not yet be known and may continue to develop and manifest over time as a result of Sedgwick's wrongful conduct.

110. Defendants' conduct described above was intended by Defendants to cause injury to Plaintiffs, or was despicable conduct carried out by Defendants with a willful and conscious disregard of the rights of Plaintiffs, or subjected Plaintiffs to cruel and unjust hardship in conscious disregard of the Plaintiffs' rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention to deprive Plaintiffs of property or legal rights or to otherwise cause injury, such as to constitute malice, oppression, or fraud under California Civil Code section 3294, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendants.

111. Defendants' conduct described herein was undertaken by the corporate Defendants' officers or managing agents, identified herein as DOES 1 through 100, who were responsible for claims supervision and operations, underwriting, communications, and/or decisions. The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of the corporate Defendants. Further, said corporate Defendants had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized, and approved by managing agents whose precise identities are unknown to Plaintiffs at this time and are therefore designated herein as DOES 1 through 100, inclusive.

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**SIXTH CAUSE OF ACTION**

**(Interference with Contractual Rights Against Sedgwick)**

**(As Assignees)**

112. Plaintiffs refer to each and every paragraph above and incorporate those paragraphs as though set forth in full in this cause of action.

113. A valid contract existed between Gracious Care and American Alternative in the form of the policy of insurance issued by American Alternative to Gracious Care (referred to herein as the Policy).

114. Sedgwick knew of this contract.

115. American Alternative owed duties and obligations to Plaintiffs, as assignees of Gracious Care and Zhao, under the Policy.

116. Sedgwick's intentional acts were designed to or induced a breach or disruption of the contractual relationship, and/or such intentional acts would foreseeably cause a breach or disruption in the contractual relationship, between American Alternative and Gracious Care.

117. Sedgwick's intentional acts caused an actual breach or disruption of the contractual relationship between American Alternative and Gracious Care. Sedgwick knew that the interference was certain or substantially certain to occur as a result of its actions.

118. Sedgwick's intentional acts caused an actual breach in the terms of the Policy by failing to provide benefits owed to Plaintiffs, as assignees of Gracious Care and Zhao, under the Policy.

119. As a direct and proximate result of Sedgwick's conduct, Plaintiffs have suffered damages under the Policy in an amount to be determined according to proof at the time of trial.

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them as follows:

**AS TO THE FIRST CAUSE OF ACTION AGAINST AMERICAN ALTERNATIVE FOR TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AS ASSIGNEES:**

1. Damages for the delay and failure to accept a reasonable settlement within the Policy limits, including the Judgment plus interest, in a sum to be determined at the time of trial;

2. For prejudgment interest on all damages awarded to Plaintiffs in accordance with California Civil Code section 3287;

3. For attorneys' fees, witness fees and costs of litigation incurred by Plaintiffs to obtain the Policy benefits, in an amount to be determined at trial;

4. For economic and consequential damages arising out of Defendants' unreasonable failure to provide benefits under the Policy;

5. For costs of suit incurred herein; and,

6. For such other relief as the Court deems just and proper.

**AS TO THE SECOND CAUSE OF ACTION AGAINST AMERICAN ALTERNATIVE FOR BREACH OF CONTRACT AS ASSIGNEES:**

1. Damages for breaching the Policy, including the Judgment, plus interest, and other economic and consequential damages, in an amount to be determined according to proof at the time of trial;

2. For prejudgment interest on all damages awarded to Plaintiffs in accordance with California Civil Code section 3287;

3. For costs of suit incurred herein; and,

4. For such other relief as the Court deems just and proper.

**AS TO THE THIRD CAUSE OF ACTION AGAINST AMERICAN ALTERNATIVE FOR RECOVERY OF JUDGMENT UNDER INSURANCE CODE § 11580 AS JUDGMENT CREDITORS:**

1. Payment of the Judgment, plus pre-judgment and post-judgment interest, in a sum to be determined at the time of trial;

2. For costs of suit incurred herein; and,

3. For such other relief as the Court deems just and proper.

**AS TO THE FOURTH CAUSE OF ACTION AGAINST AMERICAN ALTERNATIVE FOR TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AS JUDGMENT CREDITORS AND THIRD-PARTY BENEFICIARIES:**

1. Payment of the Judgment, plus pre-judgment and post-judgment interest, and other economic and consequential damages, in a sum to be determined at the time of trial;

2. Attorneys' fees and costs incurred by Plaintiffs to obtain the benefits due under the Policy for payment of the unsatisfied Judgment in an amount to be determined at the time of trial;

3. For general damages for mental and emotional distress in a sum to be determined at the time of trial;

4. For punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

5. For costs of suit incurred herein; and,

6. For such other relief as the Court deems just and proper.

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**AS TO THE FIFTH CAUSE OF ACTION AGAINST SEDGWICK FOR NEGLIGENCE AS INDIVIDUALS AND ASSIGNEES:**

1. For compensatory damages to Plaintiffs to compensate them for the economic and non-economic damages they have sustained as a result of Sedgwick's negligence;

2. For punitive and exemplary damages in an amount appropriate to punish or set an example of Sedgwick;

3. For costs of suit incurred herein; and,

4. For such other relief as the Court deems just and proper.

**AS TO THE SIXTH CAUSE OF ACTION AGAINST SEDGWICK FOR INTERFERENCE OF CONTRACTUAL RIGHTS AS ASSIGNEES:**

1. Damages for breaching or disrupting the contractual relationship between American Alternative and Plaintiffs, as assignees of Gracious Care and Zhou, including the Judgment, plus interest, and other economic and consequential damages, in an amount to be determined according to proof at the time of trial;

2. For prejudgment interest on all damages awarded to Plaintiffs in accordance with California Civil Code section 3287;

3. For costs of suit incurred herein; and,

4. For such other relief as the Court deems just and proper.

Date: October 1, 2025

SHERNOFF BIDART ECHEVERRIA LLP, BKG LEGAL GROUP APC & LARSON LLP

By: */s/ Gerald Flanagan*
RICARDO ECHEVERRIA
DANICA CRITTENDEN

CLAIRE ARNAIZ
GERALD FLANAGAN
BRANDON K. GONZALEZ
STEPHEN G. LARSON
DANIEL R. LAHANA

Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial.

Date: October 1, 2025

SHERNOFF BIDART ECHEVERRIA LLP, BKG LEGAL GROUP APC & LARSON LLP

By: */s/ Gerald Flanagan*
RICARDO ECHEVERRIA
DANICA CRITTENDEN
CLAIRE ARNAIZ
GERALD FLANAGAN
BRANDON K. GONZALEZ
STEPHEN G. LARSON
DANIEL R. LAHANA

Attorneys for Plaintiffs

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

# CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2025 I electronically filed the foregoing document entitled **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** with the United States District Court for the Central District. Notice will be automatically e-mailed to the following individuals registered with the Court's CM/ECF System:

Brandon K. Gonzalez, Esq.
BKG LEGAL GROUP, APC.
620 Newport Center Drive
Suite 1100, PMB #732
Newport Beach, CA 92660
Telephone: (949) 335-5596
Facsimile: (949) 274-8956
Email: brandon@bkglegal.com

Co-Counsel for Plaintiff

Stephen G. Larson, Esq.
Daniel R. Lahana, Esq.
LARSON LLP
555 S. Flower Street, Suite 3000
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000
Email: slarson@larsonllp.com
dlahana@larsonllp.com

Co-Counsel for Plaintiff

Alexander E. Potente, Esq.
Gary A. Barrera, Esq.
CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
Email: alex.potente@clydeco.us
gary.barrera@clydeco.us
Nicholas.bennett@clydeco.us

Attorneys for Defendant American Alternative Insurance Corporation

| | |
|---|---|
| Yvonne M. Schulte, Esq.<br>CLYDE & CO US LLP<br>355 South Grand Avenue, Suite 1400<br>Los Angeles, CA 90071<br>Telephone: (213) 357-7600<br>Facsimile: (213) 357-7650<br>Email: Yvonne.schulte@clydeco.us | Attorneys for Defendant American Alternative Insurance Corporation |
| Tamiko A. Dunham, Esq.<br>Randall P. Berdan, Esq.<br>NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP<br>101 Montgomery Street, Suite 2300<br>San Francisco, CA 94104<br>Telephone: (415) 745-3770<br>Facsimile: (415) 745-3771<br>Email: tdunham@nicolaidesllp.com<br>rberdan@nicolaidesllp.com | Attorneys for Defendant American Alternative Insurance Corporation |
| Danielle N. McKenzie, Esq.<br>CLYDE & CO US LLP<br>600 Stewart Street, Suite 400, #6262<br>Seattle, Washington 98101<br>Telephone: (206) 652-3271<br>Facsimile: (206) 652-4305<br>Email: Danielle.mckenzie@clydeco.us | Attorneys for Defendant American Alternative Insurance Corporation |

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **October 1, 2025,** at Claremont, California.

*/s/ Debbie Hunter*
Debbie Hunter



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS